UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **10-cv-00557-JLK**

**JOHANNA ETTER and ARTHUR ETTER,**

    Plaintiffs,

v.

**CHARLES KING BIBBY JR., M.D.,
TIMOTHY CARTER MEILNER, M.D., and
DELTA COUNTY MEMORIAL HOSPITAL DISTRICT**

    Defendants.

---

ORDER

---

Kane, J.,

    Plaintiffs Johanna and Arthur Etter bring four claims on behalf of their daughter, Gabrielle Etter, against Dr. Charles Bibby, Dr. Timothy Meilner, and Delta County Memorial Hospital District (DCMH). Three claims allege negligence and a breach of duty of care under state malpractice law by all three defendants and a fourth claim alleges that Defendant DCMH violated the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. 1395dd(e)(3)(b) (EMTALA).  Under the EMTALA claim, Plaintiffs allege that Defendant DCMH failed to provide a proper medical screening to Gabrielle and discharged her in an unstable condition. This matter is currently before me on Defendant DCMH's Motion for Summary Judgment on both the EMTALA claim and the state malpractice claims (doc. 76).  Being fully appraised of the arguments contained in the parties' briefs, Defendant DCMH's motion for summary judgment as

1

to Plaintiff's EMTALA claim is GRANTED.  Because I lack jurisdiction over the remaining state malpractice claims they are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND[1]

This case arises from the tragic and untimely death of Gabrielle Etter, an active thirteen-year old teenager living in Paonia, Colorado.  After she complained of a worsening illness, her mother Johanna Etter took her to be seen by their family physician. Gabrielle was diagnosed with and treated for influenza.  This treatment, however, failed to ameliorate Gabrielle's symptoms.  At home late the next evening, March 22, 2008,  her condition worsened, prompting her mother and grandmother to take her to Delta County Memorial Hospital's (DCMH) Emergency Department (ED).

Upon her arrival in the ED, Gabrielle was evaluated by triage nurse Linda Johnson. Nurse Johnson collected information relating to Gabrielle's medical history, current medications she was taking, and her reason for visiting the hospital.  During this evaluation Nurse Johnson measured Gabrielle's vital signs and Gabrielle described her pain level.  Patient Registration Form (doc. 76-1) at 4.

Based on her initial intake assessment, Nurse Johnson classified Gabrielle in triage category NU, non-urgent.  Patient Registration Form (doc. 76-1) at 4.  Gabrielle and her family were taken to an examination room and seen forty minutes later by ED Physician Dr. Charles

---

[1] These facts are taken from the parties' briefs and exhibits.  The filings are not entirely consistent in their recitation of the facts, but I have reconciled all discrepancies in favor of the Plaintiffs.  Furthermore I draw all reasonable inferences in favor of Plaintiffs (the non-moving party).  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Bibby.[2]  Deposition of Johanna Etter (doc. 83-2) at 3, 96:15-23; Deposition of Margaret Hollander (doc. 83-3) at 2, 76:16-22.  Dr. Bibby collected Gabrielle's medical history, performed a physical examination, and ordered a chest x-ray and multiple laboratory studies.  Patient Registration Form (doc. 76-1) at 7.  Blood and urine were collected to perform a panel of laboratory studies, but two tests were canceled by an unidentified hospital employee because of an insufficient blood volume in the original sample.  Patient Registration Form (doc. 76-1) at 7; Deposition of Charles King Bibby (doc. 76-3) at 4, 101:1-102:3.  Gabrielle's chest x-ray indicated pneumonia, the blood tests suggested a bacterial infection, and the urinalysis potentially indicated dehydration.  Patient Registration Form (doc. 76-1) at 15; Deposition of Michael Jobin (doc. 83-5) at 7, 69:22-70:7; DCMHD Records (doc. 83-6) at 2.

Based on his review of the results from the completed tests and his physical examination of Gabrielle, Dr. Bibby determined that additional tests were not medically necessary.  Because he did not want to subject Gabrielle to more blood draws, Dr. Bibby approved the previous cancellation of additional tests and diagnosed Gabrielle with influenza and pneumonia. Deposition of Charles King Bibby (doc. 76-3) at 4, 102:12-23, 110:13-23; Patient Registration Form (doc. 76-1) at 6.  He ordered pain medications and antibiotics to treat Gabrielle's symptoms and illness.  These medications were administered in the ED and prescribed to be taken at home following discharge.  Gabrielle's family was provided oral care instructions by Dr. Bibby and Nurse Johnson and a written copy of the instructions to take home.  Before releasing Gabrielle, Nurse Johnson collected her discharge vital signs.  Gabrielle was discharged at 4:08

---

[2]The timing of Dr. Bibby's examination is disputed.  Because DCMH documentation is internally inconsistent and conflicts with Plaintiff's recitation of the facts, I have adopted forty minutes as the timing of the examination, in favor of the Plaintiffs.

a.m. on March 22, 2008 and returned home in the care of her mother and grandmother. On March 23, 2008, Gabrielle died.[3]

## STANDARD OF REVIEW

Defendant DCMH is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(2); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A material fact is one which a rational jury could use in finding for the Plaintiffs on the basis of the evidence, ultimately affecting the outcome of the suit under governing law. *Adamson*, 514 F.3d at 1145.

To meet their burden of proof, the Plaintiffs may only rely upon evidence setting forth facts that would be admissible at trial. *Adams v. Am. Guar. and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). Accordingly, neither unsupported conclusory allegations, speculation, opinion, nor hearsay testimony are acceptable substitutions for admissible evidence or are sufficient to create a genuine dispute of material fact on summary judgment. *Mackenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 485 (10th Cir.1995).

In assessing the provided facts, I draw all reasonable inferences in favor of Plaintiffs as the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Delaney v. Cade*, 986 F.2d 387, 392 (10th Cir.1993). Because the Plaintiffs bear the ultimate burden of proof, however, Defendant DCMH, as the moving party, may prevail by

---

[3]No autopsy was performed and the parties dispute the cause of death.

showing the absence of any one necessary element. With the standard of review established, I will now address Plaintiffs' claims.

## ANALYSIS

Plaintiffs' federal claim against Defendant DCMH is governed by the Emergency Medical Treatment and Active Labor Act (EMTALA). Congress enacted EMTALA in 1986 to guarantee equal access to screening and stabilization procedures for all individuals requesting medical services in a hospital's Emergency Department (ED). *Collins v. DePaul Hosp.*, 963 F.2d 303, 308 (10th Cir.1992). Significantly, EMTALA is limited to preventing the "dumping" of patients; it is not a federal malpractice statute. *Urban v. King*, 43 F.3d 523, 525 (10th Cir.1994); *Abercrombie v. Osteopathic Hosp. Founders Ass'n*, 950 F.2d 676, 680 (10th Cir.1991).

Because Defendant DCMH has an ED, under EMTALA it has two obligations to patients requesting service: (1) it must conduct an "appropriate medical screening examination"(MSE) to determine the existence of an emergency medical condition (EMC); and (2) if the hospital acquires actual knowledge of an EMC, it must carry out "treatment as may be required to stabilize the medical condition." 42 U.S.C. § 1395dd(a)(1), (b)(1). Plaintiffs allege that Defendant DCMH failed to meet either of these obligations in its assessment and treatment of their daughter. Defendant DCMH alleges that Plaintiffs have failed to show a genuine issue of material fact regarding either Gabrielle's MSE or her EMC diagnosis and stabilization. I address each argument *seriatim*.

### Appropriate Medical Screening Exam

To prevail on their claim that Defendant DCMH failed to provide an adequate medical

screening evaluation (MSE), Plaintiffs must show that Gabrielle was not treated in the same manner as other patients with similar medical conditions. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 797 (10th Cir.2001). Defendant DCMH's policies are the touchstone of this analysis. *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519, 522 n.4 (10th Cir.1994). In making a determination of whether Defendant DCMH treated Gabrielle in the same manner as other patients, I do not assess the adequacy of its policies. I only consider whether the policies were followed. *Id.*

In support of their MSE claim, Plaintiffs bring three arguments: (1) Defendant DCMH carried out an insufficient panel of metabolic tests; (2) it failed to administer additional tests which ought to have been administered; and (3) it violated its policy when it assigned Gabrielle to an incorrect triage category. I address them in succession.

As a threshold matter, the first two arguments fail to claim a violation of hospital policy. Plaintiffs first assert that Gabrielle's MSE was inadequate because Defendant DCMH administered an insufficient panel of metabolic tests. Defendant DCMH's MSE policy requires a physician's medical screening to include the collection of a patient history, an appropriate physical examination, and a supportive diagnostic evaluation. Delta County Memorial Hospital Emergency Department Policy (doc. 83-11) at 5. Uncontested evidence demonstrates that Dr. Bibby collected Gabrielle's medical history, administered a comprehensive examination, and ordered further tests to effectuate a diagnostic evaluation. Dr. Bibby's actions fall well within those dictated by Defendant DCMH's medical screening policy. Though Plaintiffs' experts assert that Gabrielle's screening should have included the cancelled metabolic tests, these assertions fail to identify a genuine issue of material fact because they have not shown a DCMH policy that was violated by the test cancellation.

Plaintiffs also assert that the MSE was inadequate because Defendant DCMH failed to administer additional tests to diagnose Gabrielle's state of dehydration.  Every ED has a multitude of medical tests at its availability; whether or not the tests are performed on a given patient is up to the discretion of trained professionals. Unless mandated by hospital policy, I decline to intervene and dictate which tests could or should have been administered. Plaintiffs have not identified a DCMH policy which was violated by the absence of additional medical tests and have failed to identify a genuine issue of material fact with respect to Gabrielle's MSE.

Although Plaintiffs' third argument suggests a violation of DCMH policy, Plaintiffs fail to provide any admissible evidence in support of this claim.  Plaintiffs allege that Defendant DCMH violated its policy when it assigned Gabrielle an arguably incorrect triage category. Neither of Plaintiffs' experts had read Defendant DCMH's policies before giving their opinions. Their statements regarding these policies are therefore inadmissible for purposes of resolving Defendant DCMH's summary judgment motion.  Fed. R. Civ. P. 26(a)(2)(b), 37(c)(1). Accordingly, Plaintiffs have failed to provide a genuine issue of material fact regarding the assertion that Defendant DCMH violated its triage policy.  Even if the testimony of Plaintiffs' expert witnesses were admissible, however, Plaintiffs' EMTALA claim would not prevail.

Defendant DCMH's triage policy requires nursing personnel to evaluate the symptoms of each patient arriving in the ED and classify the immediacy of their medical needs into one of four categories.  The purpose of this policy is to assure that patients are treated by physicians in a timely fashion. Delta County Memorial Hospital Emergency Department Policy (doc. 83-11) at 1.  When Gabrielle arrived in Defendant DCMH's ED she was assessed by a triage nurse and diagnosed as having a non-urgent (NU) condition.

Plaintiffs argue that Defendant DCMH's triage categorization was incorrect and that based on the severity of her symptoms, Gabrielle should have been classified as having an "emergent" medical condition.[4] This classification mandates a physician evaluation within five to ten minutes. Gabrielle was seen by Dr. Bibby within forty minutes. Plaintiffs have failed to present evidence that a thirty-minute delay from ten to forty minutes actually impacted Gabrielle's diagnosis or treatment. In the absence of this evidence, these thirty minutes amount to a *de minimus* variation from Defendant DCMH's policy; this does not amount to a violation of the policy. *Repp*, 43 F.3d at 523. Plaintiffs have, therefore, failed to identify a genuine issue of material fact about whether Gabrielle was afforded an appropriate MSE; any challenge to the medical diagnosis by Plaintiffs rests in their negligence claims, not EMTALA.

### Emergency Medical Condition and Stabilization

Plaintiffs also argue that Defendant DCMH failed to stabilize Gabrielle. When a hospital knows that a patient has an emergency medical condition (EMC), it must stabilize the patient before transfer or discharge. 42 U.S.C. § 1395dd(b)(1); *Urban*, 43 F.3d at 525. When the patient has no diagnosed EMC, the duty to stabilize does not apply. *Id.* at 526. Under this standard, Plaintiffs must show that Defendant DCMH had actual knowledge that Gabrielle had an unstabilized EMC, and that it failed to properly stabilize her before discharging her. *Id.* at 525.

Plaintiffs' experts assert that the hospital should have known that Gabrielle had an EMC, but Defendant DCMH has shown that its medical personnel had no actual knowledge of an

---

[4] Although the basis for this allegation is not directly supported by Defendant DCMH's policy, I construe the policy in the light most favorable to Plaintiffs' argument. Delta County Memorial Hospital Emergency Department Policy (doc. 83-11) at 1-2.

EMC. Undisputed testimony by Plaintiffs' experts supports this position. Deposition of Michael Jobin (doc. 88-9) at 2, 102:6-22; Deposition of Timothy Hutchinson (doc. 88-1) at 3-4, 124:20-125:4 . In the absence of actual hospital knowledge, there is no EMTALA liability for failure to stabilize.

Although Plaintiffs argue that EMTALA liability can attach in the absence of actual knowledge, when it should have known that there was an EMC, there is no legal authority supporting this proposition. In fact, every circuit considering the issue has reached the opposite conclusion: actual knowledge of an EMC is a prerequisite to the duty to stabilize. *Urban*, 43 F.3d at 525-26; *Torretti v. Paoli Mem'l Hosps., Inc.*, 580 F.3d 168 (3d Cir. 2009); *Smith v. Botsford Gen. Hosp.*, 419 F.3d 513, 515-516 (6th Cir. 2005); *Vickers v. Nash Gen. Hosp., Inc.,* 78 F.3d 139, 145 (4th Cir.1996); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 158 (9th Cir.1995); *Holcomb v. Monahan*, 30 F.3d 116, 117 (11th Cir.1994); *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991). The reason for this conclusion is apparent: if EMTALA dictated a 'should have known' standard, it would swallow malpractice and overextend Congress' intended reach. *See* H.R. Rep. No. 241 (I), 99th Cong., 1st Sess. 27, *reprinted in* U.S. Code Cong. & Admin News, 42, 605.

Because they acknowledge that Defendant DCMH had no actual knowledge of an EMC, Plaintiffs have failed to provide a genuine issue of material fact regarding Defendant DCMH's duty to stabilize.[5]

---

[5]EMTALA has limited reach and purpose and does not require hospital personnel to render a correct diagnosis from a medical screening. *Collins*, 963 F.2d at n.5. By complying with its policies, a hospital has an absolute defense to an EMTALA claim. Consequently, formulation of substandard policies would seem an easy way to avoid liability. This is not the case, however, as such practices are not a defense to state malpractice liability.

## CONCLUSION

Because Plaintiffs have failed to present evidence either that Defendant DCMH's MSE was inadequate or that it failed to stabilize an EMC possessed by Gabrielle, Defendant DCMH is entitled to summary judgment. Accordingly, Defendant DCMH's motion for summary judgment on Plaintiffs' EMTALA claims is GRANTED.

Furthermore, because my jurisdiction over Plaintiffs' malpractice claims is dependent upon my jurisdiction over their EMTALA claim, I decline to exercise supplemental jurisdiction over what are uniquely state law claims. 28 USC 1367(c)(3). Accordingly, IT IS ALSO ORDERED that Plaintiff's three claims for relief under malpractice are DISMISSED WITHOUT PREJUDICE.

Dated: March 14, 2012                                BY THE COURT:

                                                     **/s/ John L. Kane**
                                                     Senior U.S. District Court Judge